# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                                                    |   |                                |
|----------------------------------------------------|---|--------------------------------|
| JAMES W. HARRINGTON,                               | ) |                                |
|       Plaintiff,     | ) |                                |
| v.                                                 | ) | Civil Action No. 19-0476 (ABJ) |
| JOHN CRAWFORD,                                     | ) |                                |
|    *Acting Deputy Director,*        | ) |                                |
|    *U.S. Government Publishing Office,* | ) |                            |
|       Defendant.     | ) |                                |

## MEMORANDUM OPINION

Plaintiff James W. Harrington has filed a six-count complaint against John Crawford, Acting Deputy Director of the Government Publishing Office ("GPO" or the "agency"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* In Counts I and II, he alleges that he was subjected to a hostile work environment based on his race and prior Equal Employment Opportunity ("EEO") activity. Compl. [Dkt. # 1] ¶¶ 45, 50. In Counts III through VI, plaintiff alleges that his supervisors took actions against him in retaliation for his protected activities. *Id.* ¶¶ 55, 60, 65, 70. Defendant has moved to dismiss Counts I through V of the complaint for failure to state a claim. *See generally* Def.'s Mot. to Dismiss [Dkt. # 5] ("Def.'s Mot."). For the reasons stated below, the Court will grant defendant's motion to dismiss those Counts. Count VI will more forward.

## BACKGROUND

Plaintiff is a Feeder Operator within the Press Offset Section of the GPO, where he has worked since 2008. Compl. ¶¶ 10, 11. Since August 10, 2014, Christopher Mitchell has been the immediate supervisor to whom plaintiff directly reports. Compl. ¶ 16.

On February 25, 2014, plaintiff filed an EEO complaint alleging that he was subjected to unlawful discrimination by two upper-level managers not otherwise involved in this case. Compl. ¶ 13. On May 9, 2017, plaintiff and the agency reached a negotiated settlement regarding that complaint. *Id*. ¶ 15. Plaintiff alleges, upon information and belief, that his immediate supervisor, Mitchell, and Gary Evans, one of plaintiff's higher-level supervisors, both learned of his 2014 EEO complaint no later than November 10, 2015. *Id*. ¶¶ 17, 23–24. He provides no other facts indicating when or how they allegedly became aware of his EEO activity.

Plaintiff alleges a series of facts related to a co-worker, Timothy Burke. He claims that on November 10, 2015, Burke entered the area where he was working, and turned off the feeder of a printing machine he was using. Compl. ¶ 32. After that, according to plaintiff, Burke "engaged in more threatening conduct." *Id*. Plaintiff reported the incident in writing to Assistant Manager Martha McRae, and he alleges, upon information and belief, that McRae informed Mitchell about the report, although he is unaware of any steps Mitchell or defendant took to address his concerns. *Id*. ¶¶ 20, 32–34.

Three months later, on February 5, 2016, Burke filed a report with the GPO Police, claiming that plaintiff had "blocked his path in a GPO hallway on January 20, 2016, and that Plaintiff approached him in a threatening manner in a GPO restroom on January 29, 2016." Compl. ¶ 35. Plaintiff alleges that Mitchell directed Burke to file the report. *Id*. GPO Police interviewed plaintiff about the allegations on February 8, 2016, and on that date, plaintiff submitted

a statement in response denying having any contact with Burke after the November 10, 2015 incident. *Id*. ¶¶ 36–37.

The complaint states that on February 8, 2016, Mitchell issued a Recommendation for Corrective Action, recommending that plaintiff be issued a seven-day suspension from work in light of Burke's allegations. Compl. ¶ 38. Approximately one month later, on March 16, 2016, Mitchell issued a Notice of Proposed Seven-Day Suspension, *id*. ¶ 39, and on March 30, 2016, plaintiff responded orally and in writing to the Notice. *Id*. ¶ 41.

Before he responded, however, plaintiff initiated an EEO action by filing an EEO precomplaint against the agency on March 24, 2016. Compl. ¶ 40.[1] Plaintiff alleges that Mitchell and Evans, in their capacities as Discrimination Officials, were notified about the pendency of the EEO precomplaint no later than May 18, 2016 *Id*. ¶ 42. On June 9, 2016, Evans sustained the charges in Mitchell's Notice of Proposed Suspension, but he mitigated the penalty to a four day suspension. *Id*. ¶ 43.

Plaintiff filed this six-count complaint on February 25, 2019. Count I alleges that plaintiff was subjected to a discriminatory hostile work environment based on his race, Compl. ¶ 45, and Count II alleges a retaliatory hostile work environment based on his prior EEO activity. *Id*. ¶ 50. Count III alleges that Mitchell retaliated against plaintiff for engaging in EEO activity in February of 2014 by encouraging Burke to file the police report on February 5, 2016. *Id.* ¶ 55. Finally, Counts IV–VI allege that the Recommendation for a Notice of a Seven-Day Suspension (Count

---

1  It is unclear from the pleadings what details plaintiff alleged in the precomplaint. He notes, however, that he received a final decision from the U.S. Equal Employment Opportunity Commission's Office of Federal Operations on November 26, 2018, which notified him of his right to file an action in district court. Compl. ¶ 3.

3

IV), the Notice of Proposed Suspension (Count V), and the four-day suspension (Count VI) were all acts of retaliation for plaintiff's prior EEO activity.[2] Compl. ¶¶ 60, 65, 70.

On June 4, 2019, defendant moved to dismiss Counts I through V for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See generally* Def.'s Mot. Defendant has not moved to dismiss Count VI at this stage of the pleadings. Mem. in Supp. of Def.'s Mot. to Dismiss [Dkt. # 5] ("Def.'s Mem.") at 1 n.1.[3] For the following reasons, defendant's motion to dismiss Counts I through V is granted.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*., quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare

---

2 Plaintiff does not specifically allege that the actions in Counts IV through VI were in retaliation for his March 2016 EEO precomplaint; in each count, he alleges that there was a causal connection between his "prior EEO activity" and the challenged action. *See* Compl. ¶¶ 61, 66, 71. Two of the actions, Mitchell's February 8, 2016 Recommendation for Corrective Action (a seven-day suspension) and his March 16, 2016 Notice of Proposed Seven-Day Suspension took place before plaintiff filed his 2016 EEO precomplaint, *see* Compl. ¶¶ 38–40; but plaintiff alleges that Evans was aware of the March 2016 EEO complaint before he imposed the four day suspension. Compl. ¶¶ 40–43.

3 Plaintiff filed an opposition to defendant's motion, [Dkt. # 6] ("Pl.'s Opp."), and defendant filed a reply, [Dkt. # 7] (Def.'s Reply), so the matter is fully briefed.

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*., citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*, 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling on a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

**I.  Plaintiff's hostile work environment claims will be dismissed under Rule 12(b)(6).**

Defendant has moved to dismiss plaintiff's claims that plaintiff was subjected to workplace harassment because of his race (Count I) and because of his prior EEO activities (Count II) on the grounds that the factual allegations are insufficient as a matter of law to state a claim under Title VII. Def.'s Mem. at 3–5. Defendant argues that the alleged set of events surrounding plaintiff's

suspension are neither sufficiently extreme or pervasive to constitute an actionable hostile work environment, and the Court agrees. Therefore, Counts I and II will be dismissed.[4]

To state a hostile work environment claim under Title VII, a plaintiff must demonstrate that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" and that this behavior is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65, 67 (1986) (internal quotation marks omitted). To determine "whether an actionable hostile work environment claim exists, [courts] look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), quoting *Harris*, 510 U.S. at 23; *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). This standard "ensure[s] that Title VII does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations and internal quotation marks omitted). For those reasons, the Supreme Court has made clear that conduct comprising a hostile work environment claims must be so extreme as "to amount to a change in the terms and conditions of employment," *id.* at 788 (internal citation and quotation marks omitted), and the D.C. Circuit requires a plaintiff in a hostile work environment claim to

---

4     The defendant also argues that the agency can not be held liable for the alleged conduct of plaintiff's co-worker, Burke, in the absence of facts showing that the employer was at least negligent in failing to prevent or respond to the harassment. Def's Mem. at 5–6. But plaintiff has clarified that Counts I and II are based solely on the actions of plaintiff's supervisors, Pl's Opp. at 3–4, so there is no need to address that issue.

provide "evidence of tangible workplace consequences, whether financial, physical, or professional." *Baloch*, 550 F.3d at 1201.

Plaintiff has explained that his claims are based on four instances of alleged harassment by his supervisors: 1) the February 5, 2016 police report which was allegedly filed by a co-worker at Mitchell's direction; 2) Michell's February 8, 2016 recommendation that plaintiff be issued a notice of proposed suspension for seven days; 3) Mitchell's March 16, 2016 notice of a proposed suspension for seven days without pay; and 4) Evans's June 9, 2016 decision to suspend plaintiff for four days without pay. Pl.'s Opp. at 3–4.

Defendant contends that items two through four – the three steps leading up to plaintiff's suspension – must be viewed as a single adverse employment action, that is, the ultimate four-day suspension. Def.'s Reply at 2. But "[a] hostile work environment consists of several individual acts that 'may not be actionable on [their] own but become actionable due to their cumulative effect.'" *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015), quoting *Nat'l R.R. Passenger Corp*, 536 U.S. at 115 (alteration in original). The Court is, therefore, required to consider all of the events alleged when it assesses the totality of the circumstances. *Baird*, 792 F.3d at 169.

Even when each step in the sequence is considered as an individual event, the four actions that were triggered by Burke's allegations are not sufficiently severe or pervasive to allege a hostile work environment. While being the subject of a police report and suspension-implementing procedures could make a work environment more unpleasant or stressful, the allegations in the complaint fall well short of describing a workplace "permeated" with intimidation or insult.[5]

---

5    Defendant accurately observed in its reply that the complaint alleges no facts suggesting that any of these events were motivated by either racial bias or retaliatory animus. Def.'s Reply at 5. Plaintiff's allegations of causation are entirely conclusory, but since defendant has not moved to dismiss on those grounds, the Court does not need to reach that issue, and the dismissal is based solely on the insufficiency of the allegations of harassment.

Here, plaintiff has simply pointed to a series of related actions taken by his supervisors in response to a single, disputed complaint lodged by a coworker. The fact that issuing plaintiff the final four-day suspension took several procedural steps does not alter the conclusion that the combination of the complaint and the sanction, standing alone, does not constitute severe or pervasive harassment. Counts I and II will, therefore, be dismissed.

**II. Plaintiff's retaliation claims will be dismissed under Rule 12(b)(6).**

In Counts III through V, plaintiff alleges that defendant retaliated against him when his supervisor Mitchell: encouraged a coworker to file a police report (Count III); recommended that a notice of a proposed seven-day suspension be issued (Count IV); and issued the notice of proposed suspension (Count V). Defendant moves to dismiss each claim for failure to state a claim on the grounds that none of the alleged actions constitutes a materially adverse action for purposes of a retaliation claim. Def.'s Mem. at 6; Def.'s Reply at 6.[6]

To establish a prima facie case of retaliation, "the plaintiff must present evidence that (1) []he engaged in a statutorily protected activity; (2) []he suffered a materially adverse action by h[is] employer; and (3) a causal connection existed between the two." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007); *see also Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir. 2006).

In the retaliation context, an adverse action is one that is "harmful to the point that [the employer's action] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Unlike in the discrimination context, the "scope of the antiretaliation provision extends beyond

---

6 Plaintiff also alleges in Count VI that the decision by Evans to suspend him for four days was retaliatory, but the defendant has not moved to dismiss that count. *See* Def.'s Mot. at 1 n.1.

workplace-related or employment-related retaliatory acts and harm," *Burlington N.*, 548 U.S. at 67, and therefore, it does not require a materially adverse change in the terms and conditions of employment. *Bridgeforth v. Jewell*, 721 F.3d 661, 663 n.* (D.C. Cir. 2013) (explaining that retaliation "encompass[es] a broader sweep of actions" than wrongful discrimination).

But even in the retaliation context, the category of adverse events does not include trivial harms: "[a]ctionable retaliation claims are limited to those where an employer causes 'material adversity,'" *Wiley*, 511 F.3d at 161 (internal quotations omitted), and the plaintiff still must suffer some "objectively tangible harm." *Holcomb*, 433 F.3d at 902. The standard is an objective one that is phrased "in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington N.*, 548 U.S. at 69.

### A. The filing of the police report is not sufficiently adverse to support the claim of retaliation in Count III.

In Count III, plaintiff alleges that Mitchell retaliated against him for his EEO activity in 2014 by encouraging Burke to file a police report about him. Compl. ¶¶ 55–56. Defendant contends that plaintiff "has failed to allege any independent, adverse consequences to him resulting from the police report," and has, therefore, failed to plead a materially adverse action. Def.'s Mem. at 8–9.

Both parties point to the D.C. Circuit's opinion in *Velikonja v. Gonzales*, 466 F.3d 122 (D.C. Cir. 2006). Def.'s Mem. at 8; Pl.'s Opp. at 8. Plaintiff emphasizes that in that case, the Court found the initiation of an internal investigation to be materially adverse because of its potential chilling effects on an employee's participation in protected activities, Pl.'s Opp. at 8, but the defense suggests that the opinion is distinguishable because the plaintiff in that case specifically pled that a "lengthy investigation" prevented her from receiving promotions and "'placed a cloud' over [her] career." Def.'s Reply at 7, quoting *Velikonja*, 466 F.3d at 124.

9

In *Velikonja*, the Court of Appeals reversed a lower court's decision to grant defendant's motion to dismiss, but it emphasized the plaintiff's well-pled allegations about the consequences of the investigation, including that plaintiff was effectively prevented "from obtaining [] career-enhancing assignments for which she [was] highly qualified" could lead a reasonable jury to "find that the prospect of such an investigation could dissuade a reasonable employee from making or supporting a charge of discrimination." 466 F.3d at 124. Applying that precedent, other courts in this district have found that "while the 'mere initiation' of an investigation may not constitute a materially adverse action," *King v. Holder*, 77 F. Supp. 3d 146, 151 (D.D.C. 2015), quoting *Youssef v. FBI*, 687 F.3d 397, 401 (D.C. Cir. 2012), "[where] the investigation resulted in 'materially adverse consequences affecting the terms, conditions, or privileges of employment . . . a reasonable trier of fact could conclude that the plaintiff [] suffered objectively tangible harm.'" *Id.*, quoting *Ware v. Billington*, 344 F. Supp. 2d 63, 76 (D.D.C. 2004); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 76 (D.D.C. 2007).

Here, plaintiff alleges that after Burke lodged the complaint, he was interviewed by the GPO police, and he submitted a statement denying the accusations that same day. Compl. ¶¶ 36--37. He does not allege that the investigation continued thereafter, that it resulted in any criminal charges, or that the investigation itself produced an adverse employment consequence; what he suggests is that "[h]arm *could have* resulted from a GPO police complaint being filed against Plaintiff at the direction of Plaintiff's supervisor in the form of disciplinary action, criminal prosecution, or some other action." Pl.'s Opp. at 7 (emphasis added). Following the guidance of *Velikonja,* the Court will dismiss Count III without prejudice since the complaint does not allege facts giving rise to an inference that plaintiff suffered negative consequences as a result of the report made to the GPO police.

### B. The suspension-related events do not constitute individual materially adverse actions.

The final two matters at issue are plaintiff's allegations that Mitchell retaliated against him for his prior EEO activity when Mitchell recommended a seven-day suspension (Count IV) and then issued the notice of proposed suspension (Count V). Defendant argues that the two events are not independently actionable retaliation claims because they are part of the final four-day suspension, which is the only event that produced the tangible consequences of a materially adverse action. Def.'s Mem. at 7–8.

The D.C. Circuit has held that a proposed suspension that is not actually served does not constitute a materially adverse employment action for retaliation claims. *Baloch*, 550 F.3d at 1199 (plaintiff's allegations that "proposed 2-day and 30-day suspensions were materially adverse actions that tarnished his reputation and caused emotional distress" were not materially adverse; "courts have been unwilling to find adverse actions where the suspension is not actually served"); *see also Hayes v. Chao*, 541 F. Supp. 2d 387, 394 (D.D.C. 2008) (rejecting a claim based on a proposed suspension on the basis that "the D.C. Circuit has repeatedly held that threats of *future* adverse actions are not tangible harms that may constitute adverse actions") (emphasis in original). In *Baloch*, the Court also noted that the fact that the supervisor who proposed a sanction was different from the supervisor who had the authority to impose it weighed against a determination that the proposed suspension was itself a materially adverse event. 550 F.3d at 1199.

Here, the final decision maker was Evans, not Mitchell, and ultimately the seven-day suspension recommended and proposed by Mitchel was never imposed; instead Evans implemented a lesser sanction. For these reasons, the Court finds that the recommendation and notice of proposed suspension do not constitute materially adverse actions, and Counts IV and V

will be dismissed.  Count VI, which alleges that the suspension that was ultimately served was retaliatory, will proceed.

## CONCLUSION

For the foregoing reason, defendant's motion to dismiss Counts I through V is granted and Count VI will move forward.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 27, 2020