UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES W. HARRINGTON,        )<br>         Plaintiff,                         )<br>                                              )<br>v.                                            )<br>                                              )<br>HUGH HALPERN, Director,     )<br>U.S. Government Publishing Office, )<br>         Defendant.                       )<br>                                              ) | Civ. A. No. 19-0476 (ABJ)<br><br><br><br><br>Date: June 17, 2021 |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, James Harrington, by counsel, hereby submits this memorandum in Opposition to the Motion for Summary Judgment filed by Defendant. Below, Plaintiff demonstrates that he can establish a *prima facie* case of retaliation and sufficiently rebut the Defendant's proffered legitimate, nondiscriminatory reason. He further shows that there are numerous material factual disputes and the need for credibility determinations, which preclude summary judgment. Accordingly, Defendant's motion should be DENIED in its entirety.

**I.      INTRODUCTION**

Plaintiff James Harrington has been employed by Defendant within the Press Offset Section of the Press Division of the Government Printing Office's Plant Operations in Washington, D.C. since September 2, 2008. Exhibit (Ex.) 1, Harrington Dep. 9:15-18. On February 25, 2014, Plaintiff engaged in protected activity when he initiated an Equal Employment Opportunity ("EEO") complaint alleging unlawful discrimination on the basis of race by two of his upper-level managers, Gregory Estep and Melinda Ford. *Id.*, at 15:24-16:9. A few months later, Plaintiff began reporting to Christopher Mitchell, who subsequently became aware of Plaintiff's prior EEO activity at some point the following year. *Id.*, at 15:4-11, 22:10-25. Gary Evans, Plaintiff's higher-

1

level supervisor, became aware of Plaintiff's prior EEO activity at some point prior to November 10, 2015. Ex. 2, EEO Affidavit of Gary Evans.

On November 10, 2015, one of Plaintiff's coworkers, Timothy Burke, entered Plaintiff's work area and engaged in threatening conduct towards Plaintiff. Without warning, Mr. Burke shut off the press machine on which Plaintiff was working and walked toward Plaintiff in an aggressive manner while shouting belligerently. Ex. 1, Harrington Dep. 24:1-8. Plaintiff reported this incident with Mr. Burke in writing to the assistant manager, Marsha McRae. *Id*. As a result of this incident, on or about March 16, 2016, Mr. Mitchell proposed to suspend both Plaintiff and Mr. Burke from work for seven days. Mr. Burke has not previously engaged in protected EEO activity and Mr. Burke had a more severe history of discipline that Plaintiff. The deciding official, Mr. Gary Evans, was required to consider the severity of the history of discipline when determining the penalty to impose. Mr. Evans imposed a four-day suspension upon Mr. Burke. Instead of imposing a lesser penalty upon Plaintiff because he had a less severe history of discipline, Mr. Evans imposed the same discipline given to Mr. Burke

## II. RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS[1]

*1. Plaintiff James Harrington and another employee, Timothy Burke, were involved in an incident in which each alleged that the other had engaged in unprofessional and discourteous conduct on the floor of the press room on November 10, 2015. (Ex. 1 to Hayes Decl. at 1-2)*

**UNDISPUTED. On November 10, 2015, Mr. Burke approached the press on which Plaintiff was working and asked him where Mr. Mike Stone, offset pressperson, was. Upon Plaintiff telling him that Mr. Stone was out smoking, Mr. Burke cut off the feeder of Plaintiff's press. Mr. Burke then proceeded to engage in a heated verbal exchange with**

---

[1] In this section, Plaintiff is responding to the Defendant's statement of facts and responding thereto. *See* Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment.

**Plaintiff, conducting himself in an aggressive manner that led Plaintiff to believe that Mr. Burke was going to physically hit him. After this exchange, Plaintiff reported Mr. Burke's actions to Ms. Marsha McRae. Ex. 3, Statements from Harrington and Burke.**

*2.     Both Harrington and Burke provided accounts of the incident to their manager, Christopher Mitchell, that contradicted each other, with each asserting that the other had acted in an inappropriate manner. (Mitchell Dep. at 26-27; Ex. 1 to Hayes Decl.)*

**UNDISPUTED. Mr. Burke and Plaintiff both provided statements to Mr. Mitchell regarding the November 10, 2015 incident which offered different accounts. Ex. 3, Statements from Harrington and Burke.**

*3.     Certain witnesses also provided statements regarding the incident to Mr. Mitchell, some of which supported Burke's account and some of which supported Harrington's account. (Harrington Dep. at 35-36)*

**UNDISPUTED. In the Notice of Proposed 7-Day Suspension issued to Plaintiff by Mr. Mitchell, Mr. Mitchell referenced varying witness accounts of the November 10, 2015 incident between Plaintiff and Mr. Burke. Ex. 4, Hayes Decl.**

*4.     Based on the information provided to him by Harrington, Burke and other witnesses, Mr. Mitchell determined that both Harrington and Burke each shared responsibility for the November 10, 2015 incident. (Mitchell Dep. at 26-27)*

**DISPUTED as to the issue that the information relied upon by Mr. Mitchell in his determination is disputed by Plaintiff; however, it is UNDISPUTED that Mr. Mitchell, according to his written statement on November 10, had the opportunity to review statements provided by various witnesses as to the events of the incident in question. Ex. 5, Statement from Mitchell.**

3

*5.     On March 16, 2016, Mitchell proposed that Harrington be issued a 7-day suspension, stating in the proposal notice that this was the second documented incident of inappropriate conduct by Harrington. (Ex. 1 to Hayes Decl.)*

**UNDISPUTED.**

*6.     Harrington had been issued a Letter of Warning on August 7, 2014, for inappropriate/unacceptable conduct and displaying an aggressive posture and facial expressions towards a senior manager. (Ex. 2 to Hayes Decl.)*

**UNDISPUTED. Plaintiff was issued a Letter of Warning in regard to an incident when he was quoting a phrase from a character on *The Simpsons* television show, which was heard by his supervisor, Mr. Estep. Harrington Dep. 19:3-9.**

*7.     The Letter of Warning stated that it would be "filed in Mr. Harrington's Official Personnel Folder for a period not to exceed two years, and may be used during this period to determine the range of penalties for a future disciplinary action should there be a need." (Harrington Dep. at 20-21; Ex. 2 to Hayes Decl.)*

**UNDISPUTED.**

*8.     Mitchell also proposed that Burke be issued a 7-day suspension as a result of his role in the November 10, 2015 incident. (Mitchell Dep. at 26-27; Mitchell EEO Aff. ¶¶ 17, 22)*

**UNDISPUTED. The notice of proposed suspension issued to Burke by Mitchell also stated that "[t]his is not the first time [Burke has] received a formal corrective action for [his] inappropriate conduct. This incident is [his] second formal documented incident of violating GPO directives." Ex. 6, Burke's Disciplinary History.**

*9.     In June 2016, Gary Evans, the departmental manager and decisionmaker on both suspensions, issued a decision on the proposal to suspend Harrington, determining that a*

4

*suspension was appropriate but reducing Harrington's suspension to four days, spanning a period of Friday to Monday such that Harrington lost only two days of pay. (Evans Dep. at 36-40; Ex. 3 to Hayes Decl.)*

**UNDISPUTED.**

10. *Evans also issued a decision on the proposal to suspend Burke, determining that a suspension was appropriate but reducing Burke's suspension to four days, spanning a period of Friday to Monday such that Burke lost only two days of pay. (Evans Dep. at 36-40)*

**UNDISPUTED.**

11. *As of the date of Evans' decision on the proposed suspensions, the Equal Employment Opportunity ("EEO") Office of the U.S. Government Publishing Office does not reflect any prior EEO activity by Burke. (Hayes Decl. ¶ 5)*

**UNDISPUTED.**

### III. PLAINTIFF'S STATEMENT OF FACTS[2]

1. On February 25, 2014, Plaintiff initiated an EEO complaint against Gary Estep and Melinda Ford. Ex. 1, Harrington Dep. 15:24-16:11. In May 2017, after extensive litigation, Plaintiff and the Agency entered into a settlement agreement to resolve the complaint. Ex. 11.

2. As Plaintiff's supervisor, Mr. Mitchell became aware of Plaintiff's EEO activity prior to November 10, 2015. Ex. 1, Harrington Dep. 22:1-23:12.

3. On November 10, 2015, while working on the color press with Mr. Mike Stone, Plaintiff was approached by Mr. Burke while Plaintiff was searching for a deletion pen. Ex. 3, Statements from Harrington and Burke.

---

[2] Plaintiff incorporates by reference the facts provided in the Complaint relevant to the claim at issue. *See* ECF 1, ¶¶ 31-43.

4. Mr. Burke then asked where Mr. Stone was. *Id*. Plaintiff replied that Mr. Stone was out smoking, after which Mr. Burke turned off the feeder to the color press. *Id*.

5. Plaintiff asked Mr. Burke why he turned off the feeder, to which Mr. Burke replied that there was "not a fucking operator here." *Id*.

6. Mr. Burke then began to approach Plaintiff in an aggressive manner. *Id*. Plaintiff told Mr. Burke to not speak to him in that manner. *Id*. Mr. Burke responded by asking "What are you [Plaintiff] going to do about it?" while yelling and indicating that he was about to physically hit Plaintiff. *Id*. Mr. Burke told Plaintiff "not to ask stupid fucking questions" and asked, "What are you going to do now, little baby, go tell on me?" *Id*.

7. Plaintiff reported this incident to Ms. Marsha McRae. Ex. 1, Harrington Dep. 24:1-8.

8. As Plaintiff went to retrieve a pen in order to provide a written statement, Plaintiff and Mr. Burke engaged in an additional verbal altercation after Mr. Burke continued to act in an aggressive and threatening manner. Ex. 3, Statements from Harrington and Burke.

9. Following the incident on November 10, 2015, Mr. Mitchell collected and reviewed statements from Plaintiff, Mr. Burke, and other witnesses regarding the event. Ex. 5, Statement from Mitchell.

10. On March 16, 2016, Mr. Mitchell issued Plaintiff and Mr. Burke a Notice of Proposed Seven-Day Suspension. Ex. 1, Harrington Dep. 31:7-12.

11. Prior to November 10, 2015, Plaintiff had only one previous instance of discipline on his record. Plaintiff received a Letter of Warning in August 2014 for inappropriate/unacceptable conduct. Ex. 1, Harrington Dep. 17:23-25.

12.     Prior to November 10, 2015, Mr. Burke had been the subject several disciplinary actions. On October 24, 2012, Mr. Burke was notified of a proposed fifteen-day suspension that was later mitigated down to a five-day suspension based on the charge of inappropriate behavior. Ex. 6, Burke's Disciplinary History. Mr. Burke was also issued a Letter of Warning for the Use of Inappropriate Language towards a coworker on April 21, 2011. *Id*.

13.     On June 9, 2016, Gary Evans issued both Plaintiff and Mr. Burke a decision on their respective notices of proposed suspension. Both were issued four-day suspensions. Ex. 8, Evans Dep. 37:1-21.

## IV.     ARGUMENTS

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *McKinney v. United Stor-All Centers LLC*, 656 F. Supp. 2d 114, 120 (2009) (citing Fed. R. Civ. P. 56(c)). Where the moving party makes an initial showing that there is no genuine issue of material fact, the nonmoving party must "go beyond the pleadings" and rely on affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate that a genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court must view all facts and evidence, and all justifiable inferences thereof, in the light most favorable to the nonmoving party. *Id.*, at 255.

### A. PLAINTIFF HAS STATED A *PRIMA FACIE* CASE OF RETALIATION.

An employee may establish a *prima facie* case of reprisal by showing that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between the former and the latter. *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015). For purposes of establishing a *prima facie* case of retaliation, "[t]emporal proximity can indeed support an inference of causation, but only where the two events are very close in time." *See Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (citing *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)). However, there is no bright-line rule when establishing causation, and the Court must evaluate the specific facts of each case when determining whether it is appropriate to infer causation in cases of retaliation based on temporal proximity. *Id.*; *see also Lowe v. Jackson*, 28 F. Supp. 3d 63, 80 (D.D.C. 2014); *Kachmar v. Sungard Data Sys.*, 109 F.3d 173 (3d Cir. 1997) (the element of causation is highly context-specific and the absence of immediacy between the cause and effect does not disprove causation).

In its motion, the Defendant argues that the alleged gap of two years between Plaintiff's 2014 EEO activity and the issuance of the four-day suspension is such that the Plaintiff, while establishing the first two prongs, fails to raise an inference of retaliation sufficient to demonstrate a *prima facie* case of reprisal. However, the cases that the Defendant cites to do not support this argument. The correct measure of time that should be considered by the Court when determining an inference of causation is not the time between the plaintiff's protected activity itself and the subsequent adverse employment action, but the time between when management became aware of the plaintiff's protected activity and the adverse employment action. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (analyzing the temporal proximity between an employer's knowledge of protected activity and an adverse employment action as evidence of causality).

Further, this Court has held that, for the purpose of determining temporal proximity in cases of retaliation, a plaintiff's protected activity extends beyond the mere initiation of litigation. *See Ross v. United States Capitol Police*, 195 F. Supp. 3d 180, 206–07 (D.D.C. 2016). In *Ross*, this Court rejected "USCP's suggestion that Ross's participation in protected activity ended in 2005; that class action was then, and still is, ongoing." *Id*. Additionally, this Court found no support in case law for the proposition that protected EEO "participation" is limited to the single action that begins a proceeding. *Id*.; *see also Bean v. District of Columbia*, 264 F. Supp. 3d 242, 257-58 (D.D.C. 2017) ("Plaintiff's ongoing litigation of the OEA appeal was protected activity, and this chain of events – if proved – could give rise to an inference of a causal connection between her protected activity and an adverse employment action."); *Miller v. Fairchild Indus., Inc*., 797 F.2d 727, 731–32 (9th Cir. 1986) (evidence supported retaliatory motive where layoffs occurred less than two months after parties negotiated settlement of EEOC charge of discrimination). Here, although Plaintiff initiated his EEO complaint in early 2014, Plaintiff's EEO activity was ongoing in nature as Plaintiff and Defendant were engaged in active litigation until they entered a negotiated settlement agreement in May 2017. Therefore, the Defendant's argument that this Court is precluded from finding temporal proximity between the Plaintiff's initial EEO activity in 2014 and the proposed suspension in 2015 is plainly incorrect in light of this Court's jurisprudence.

Additionally, there exists an issue genuine dispute of material fact regarding when Mr. Mitchell became aware of Plaintiff's protected activity. Mr. Mitchell has served as Plaintiff's first-line supervisor since August 10, 2014. Mr. Mitchell has also admitted to having knowledge of Plaintiff's prior EEO activity prior to the incident between Plaintiff and Mr. Burke in November 2015, however he could not recall when exactly he became aware of Plaintiff's protected activity. Mitchell Dep. 18:21-19:9. Plaintiff also could not say for certain exactly when Mr. Mitchell

9

became aware of his prior EEO activity. Harrington Dep. 13-16. Because the record has not sufficiently established the true timeframe between Mr. Mitchell's knowledge of Plaintiff's prior EEO activity and the adverse action taken against him, to the extent the Court concludes that this evidence of Mr. Mitchell's knowledge of Plaintiff's prior EEO activity is not by itself dispositive to the question of causality, it establishes a material factual dispute which should preclude summary judgment as to Plaintiff's claim of retaliation. Furthermore, when viewed in a light most favorable to Plaintiff, the temporal proximity issue should be assumed to be in Plaintiff's favor. *See Anderson*, 477 U.S. at 255.

In addition to the temporal proximity, Plaintiff has provided additional evidence of discriminatory motive as described below. *See Lewis v. D.C.*, 653 F. Supp. 2d 64, 79 (D.D.C. 2009) (plaintiffs may offer additional evidence beyond temporal proximity in support of showing causation); *Walker v. England*, 590 F. Supp. 2d 113 (D.D.C. 2008) (causation may also be shown through a pattern of antagonism directed towards the employee following his EEO-protected activities)*; Pardo-Kronemann v. Jackson*, 541 F. Supp. 2d 210, 218 (D.D.C. 2008) (causation may be established when the employer retaliates at the first opportunity presented, even if there is a substantial gap in time). Plaintiff has offered comparative evidence indicative of discrimination as well as evidence that the Defendant failed to follow the proper procedures related to the imposition of disciplinary actions. This evidence of causation, in conjunction with the temporal proximity described above, is more than enough to satisfy Plaintiff's burden of establishing a *prima facie* case of retaliation. *See Allen*, 795 F.3d at 39.

### B. PLAINTIFF CAN REBUT AS PRETEXT THE DEFENDANT'S PROPOSED LEGITIMATE, NON-RETALIATORY REASON FOR THE SUSPENSION.

After the *prima facie* case is established, the order of proof then follows the traditional three-part evidentiary framework established in *McDonnell Douglas Corporation v. Green*, 411

U.S. 792 (1973), *i.e.,* the burden then shifts to the employer to articulate a legitimate nondiscriminatory reason for the alleged acts of reprisal, and the plaintiff is given the opportunity to prove that the reason is a pretext for retaliation. *See Park v. Washington Metro. Area Transit Auth.*, 892 F. Supp. 5, 11 (D.D.C. 1995), *aff'd*, 107 F.3d 924 (D.C. Cir. 1996). The employer's explanation must be sufficiently clear to raise a "genuine issue of fact" as to whether discrimination occurred. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Furthermore, it must "frame the factual issue with sufficient clarity so that [the plaintiff] will have a full and fair opportunity to demonstrate pretext." *Id.* at 255-256. There are multiple ways to cast doubt on the employer's asserted reason for acting: "for instance, the plaintiff may draw comparisons to others similarly situated, submit evidence suggesting that the employer has lied about the underlying facts, or suggest the employer failed to follow established protocol or procedure." *See Gurara v. D.C.*, 881 F. Supp. 2d 143, 147 (D.D.C. 2012) (citing *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C.Cir.2008)).

Evidence of pretext may include the variant treatment of similarly situated employees, discriminatory statements by decision makers, and irregularities in the offered reasons for the adverse employment decision. *Mokhtar v. Kerry*, 83 F. Supp. 3d 49 (D.D.C. 2015) (citing *Bennett v. Solis*, 729 F.Supp.2d 54, 60 (D.D.C.2010)). Factors that bear on whether someone is an appropriate comparator include the similarity of jobs and job duties, whether the employees were disciplined by the same supervisor, and, in cases involving discipline, the similarity of the offenses. *Burton v. D.C.*, 153 F. Supp. 3d 13 (D.D.C. 2015), *aff'd sub nom. Nelson v. D.C.*, 689 F. App'x 642 (D.C. Cir. 2017). Whether another employee is similarly situated to a plaintiff is not a mechanical comparison, but requires enough common factors to determine if intentional discrimination was at play by eliminating confounding variables, such as differing roles,

performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination. *Burton v. D.C.*, 153 F. Supp. 3d 13 (D.D.C. 2015), *aff'd sub nom. Nelson v. D.C.*, 689 F. App'x 642 (D.C. Cir. 2017) (citing *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir. 2014)). Finally, comparator evidence can be used to show pretext when all of the relevant aspects of [the comparator's] employment were 'nearly identical' to those of" complainant. *See Royall v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 548 F.3d 137, 145 (D.C. Cir. 2008) (emphasis added).

In this case, Timothy Burke is a similarly situated employee outside of Plaintiff's protected class who was treated more favorably than Plaintiff. At the time of the incident on November 10, 2015 for which both Mr. Burke and Plaintiff were disciplined, Mr. Burke reported to the same supervisory chain and worked in the same department as Plaintiff. Both Mr. Burke and Plaintiff were issued a proposed seven-day suspension by Mr. Mitchell (Ex. 7, Mitchell Dep. 26:11-17) and were issued a final four-day suspension by Mr. Gary Evans (Ex.8, Evans Dep 37:1-21). Mr. Burke and Plaintiff are equal comparators save for one critical element, namely, prior disciplinary history. The difference in prior disciplinary history is critical to Plaintiff's argument that Mr. Burke was treated more favorably; therefore, the remaining common factors shared between Plaintiff and Mr. Burke are sufficient in this case to establish that all remaining aspects of their employment are identical and that they are accurate comparators. *See Cung Hnin*, 751 F.3d at 504 (the similarly situated inquiry only requires enough common factors to determine if intentional discrimination was at play).

As stated above, Mr. Burke has a significantly more serious disciplinary history at the Agency. On October 24, 2012, Mr. Burke was notified of a proposed fifteen-day suspension that was later mitigated down to a five-day suspension based on the charge of inappropriate behavior.

Ex. 6, Burke's Disciplinary History**.** Mr. Burke was also issued a Letter of Warning for the Use of Inappropriate Language towards a coworker on April 21, 2011. *Id.* Meanwhile, the only example of prior discipline in Plaintiff's record was a Letter of Warning issued on August 7, 2014 for Inappropriate/Unacceptable Conduct. Ex. 4. Given this significant difference in prior disciplinary history, when Plaintiff "was treated the same as Burke, who had no prior EEO history" as the Defendant states in its Memorandum in Support of Defendant's Motion for Summary Judgment, Mr. Burke was in fact treated more favorably than Plaintiff in the same situation. Mem. Supp. Def.'s Mot. Summ. J., at 7.

An employer's violation of its own procedures can also be used as evidence of pretext. *See Greer v. Paulson*, 505 F.3d 1306, 1319 (D.C. Cir. 2007); *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185 (D.D.C. 2013) ("[D]eviations from standard procedures may even give rise to an inference of pretext at the summary-judgment stage."); *Omwenga v. United Nations Found.*, No. 15-CV-786 (TSC), 2019 WL 4860818 (D.D.C. Sept. 30, 2019), *on reconsideration in part*, No. 15-CV-0786 (TSC), 2020 WL 5798428 (D.D.C. Sept. 29, 2020) (finding evidence pretext when the plaintiff was not counseled or referred to counseling which was inconsistent with the "Conflict Resolution and Progressive Discipline" guidelines in the UNF employee handbook). In this case, Plaintiff has demonstrated pretext by showing that the Defendant failed to follow proper disciplinary procedure within the Agency. Pursuant to GPO Directive 655.4B,

> It is the policy of the GPO that discipline for misconduct be constructive, progressive, and consistent within the agency. Further, the GPO aims to ensure due process for all covered employees. Discipline must be reasonable, taken for just cause, and not be arbitrary or capricious. The object is not to punish, but to correct misconduct and to deter future offenses. Supervisors should choose the minimum penalty that can reasonably be expected to achieve these objectives.

Ex. 9, GPO Directive 655.4B(5). Supervisors are responsible for applying the agency's corrective action program to employees under their supervision and must avoid illegal discrimination when

13

instituting corrective actions. Ex. 9, GPO Directive 655.4B(8)(b), (d). When issued a written decision regarding corrective action, the decision letter must be issued within a reasonable period of time and after application and consideration of the *Douglas* factors.[3] Ex. 9, GPO Directive 655.4B(12)(c). In discriminatorily issuing Plaintiff and Mr. Burke the same suspension without taking into account this notable difference in disciplinary history (Ex. 8, Evans Dep. 41:5-8), the Defendant deviated from the standard procedures governing the discipline of federal employees as well as its own internal policy. *See* Ex. 9, GPO Directive 655.4(B); Ex. 10, Master Labor-Management Agreement ("As a general policy, the GPO will normally follow the principle of progressive discipline and abide by the principle of like penalties for like offenses for employees *with comparable disciplinary records*.").

Plaintiff has also demonstrated pretext by showing that the Defendant failed to follow proper procedure when considering prior disciplinary history when deciding on Burke's and Plaintiff's proposed suspensions, pursuant to the factors laid out in *Douglas v. Veterans Administration*, 5 MSPR 280 (1981). *See* GPO Directive 655.4B, Appendix A. *Douglas* sets forth the standards that must be considered in taking disciplinary action against a federal employee, and these standards were applicable in deciding Plaintiff's suspension. *Id*. Pursuant to the factors outlined in *Douglas* and available in GPO Directive 655.4B, Appendix A, the deciding official, Gary Evans, should have considered the employee's past disciplinary record as a mitigating factor when issuing the suspension for both Plaintiff and Mr. Burke. 5 MSPR 280, 305. Here, however, it appears that Mr. Evans did not properly weigh this factor when mitigating their suspensions as

---

[3] *Douglas v. Veterans Administration*, 5 MSPR 280 (1981) outlines the factors that must be considered in taking disciplinary action against a federal employee. There are twelve *Douglas* factors that must be considered, as applicable, in determining the severity of the discipline, and the most relevant factor to this case is: "(3) the employee's past disciplinary record." *Id*.

evidenced by Mr. Burke's more substantial history of discipline which included an additional suspension. Ex. 6, Burke's Disciplinary History.

## V. CONCLUSION

Based on the foregoing points and authorities, Plaintiff respectfully submits that Defendant's Motion for Summary Judgment should be DENIED. A proposed Order denying the motion is submitted herewith.

        Respectfully submitted,

        /s/ Ricardo J.A. Pitts-Wiley
        Ricardo J.A. Pitts-Wiley
        DC Bar #: 982952
        THE FEDERAL PRACTICE GROUP
        1750 K Street, NW, Suite 900
        Washington, DC 20006
        (202) 862-4360 Telephone
        (888) 899-6053 Facsimile
        rpittswiley@fedpractice.com

        *Counsel for Plaintiff*